JASPER CULVER ET AL., APPELLANTS, V. FREDERICK GARBE ET AL., APPELLEES.

[FILED SEPTEMBER 17, 1889.]

Mill-Dams: EMINENT DOMAIN: WATER RIGHTS.  Appellant's assignor instituted *ad quod damnum* proceedings for the purpose of securing the right to overflow appellee's land by the construction of a mill-dam.   After the jury of inquest had made

its report, a compromise was effected, in pursuance of which the land owner leased a portion of the real estate to the plaintiff in the action by a lease which is set out at length in the opinion. Subsequently appellee sought to create a fish pond by the construction of two dams within the leased land and in the channel of the stream, and cutting a ditch from above the upper dam to below the lower one, thereby reducing the quantity of water in the reservoir and straightening the channel of the stream and endangering the permanency of appellant's dam. In an action by appellant to enjoin appellee from constructing the dam and ditch, the injunction was, upon final trial, refused, and appellant was enjoined from interfering with the construction of said dams and ditch. Upon appeal it was *held*, that appellant had a vested right in the stream and water within the land covered by the lease, and that appellee had no right or authority to interfere therewith, and would be enjoined from changing the course of the stream, constructing the dam, or diminishing appellant's reservoir or supply of water.

APPEAL from the district court for Fillmore county. Heard below before MORRIS, J.

*Robert Ryan,* and *P. B. Tolles,* for appellants:

The trial court's construction of the lease, restricting appellants' right to the natural flowage, involves a contradiction in the terms, and should be rejected. (Bishop on Contracts, sec. 384.) Every lease implies a covenant for quiet enjoyment, and landlord may not enter without lessee's consent. (*Sherman v. Williams,* 113 Mass., 481; *Mayor v. Mabie,* 13 N. Y., 157; *Dexter v. Manley,* 4 Cush. (Mass.), 24; *Mack v. Patchin,* 42 N. Y., 171; *Lovering v. Lovering,* 13 N. H., 518; *Hamilton v. Wright,* 28 Mo., 205.) A covenant that lessee shall occupy premises for a certain time amounts to one for quiet enjoyment. (*Ellis v. Welch,* 6 Mass., 246.) The entry of the landlord is trespass. (*Bryant v. Sparrow,* 62 Me., 546.) A lessee for a two-thirds share may maintain trespass. (*Blake v. Coats,* 3 G. Greene [Ia.], 548); also where the rental is for half, the landlord furnishing a horse. (*Hatchell v. Kimbrough,* (4 Jones' Law [N. C.], 163.) A tenant at will may main-

tain trespass against his landlord. (*Dickinson v. Goodspeed*, 8 Cush., 119.) The obstruction of water courses, diversion of streams from mills, back-flowage, etc., are proper subjects for equitable interposition. (*Universities v. Richardson*, 6 Vesey Jr., 706; *Lane v. Newdigate*, 10 Id., 192; *Chalk v. Wyatt*, 3 Meriv., 688; *Robinson v. Lord Byron*, 1 Bro. C. C., 585; 2 Story Eq. Jur., sec. 927; Binney's case, 2 Bland Ch. [Md.], 99; *Wright v. Moore*, 38 Ala., 593; *Arthur v. Case*, 1 Paige Ch., 447; *Webb v. Mfg. Co.*, 3 Sumner (C. C.), 189; *Tyler v. Wilkinson*, 4 Mason (C. C.), 397; *Mayor v. Com'rs*, 7 Pa. St., 348; *Hulme v. Shreve*, 3 Green Ch. [N. J.], 116; *Hart v. Mayor*, 3 Paige Ch. [N. Y.], 213; *Burwell v. Hobson*, 12 Gratt. [Va.], 322; *Burnham v. Kempton*, 44 N. H., 94–5; *Crossley v. Lightowler*, L. R., 3 Eq. Cas., 296–7; *Roath v. Driscoll*, 20 Conn., 533; *Shields v. Arndt*, 3 Green Ch. [N. J.], 245, and cases cited.)

*O. P. Mason*, for appellees:

The findings below are in conformity with the law as established by this court. (*Johnson v. Sutliff*, 17 Neb., 423.) As to the rights acquired by the *ad quod damnum* proceedings, see Lewis on Eminent Domain, sec. 183; and it is with reference to these rights that the lease must be construed; hence the construction of the court below is correct. (Pomeroy on Riparian Rights, secs. 55–6.)

REESE, CH. J.

This action was instituted in the district court of Fillmore county by Jasper and Helen Culver, appellants in this court, who alleged in their petition that on and prior to the 8th day of June, 1881, one Jerusha A. Ellis was the owner of a water mill situated on section one, township eight north, range four west in Fillmore county, and that at said time Frederick Garbe and Wilhelmina Garbe,

were, and still are, the owners of the southwest quarter of the northeast quarter of section one, township eight north, of range four west, also of that part of the northwest quarter of said section, described as follows: Commencing 13 chains and 82 links north of the center of the said section, and running thence north to the section line; thence west 36 chains and 15 links; thence south 3 chains and 84 links; thence in a southeasterly direction, and along the south bank of the river to the place of beginning; that said Jerusha A. Ellis, for her heirs, executors, administrators, and assigns, leased the above described land for such a period of time as said Jerusha A. Ellis, her heirs, etc., and assigns should keep up and maintain a mill on or near the present site, on said section, for the consideration of $941. A copy of the lease is set out in the petition.

It was alleged that by assignments, which need not here be detailed, the property and lease were conveyed to plaintiffs; that the lease was given to preserve the rights of the owners of the mill to the use of the land described therein for water mill and dam purposes, and that the land described in said lease had been in the possession of plaintiffs and their assignors from the day of that date until the 18th day of October, 1886, when defendant, without the knowledge or consent of plaintiff, entered upon the land on the north side of the Blue river, described in the lease, and were engaged in digging a large ditch across the land and erecting two dams in said river, for the purpose of changing the channel of the river and diverting the water therefrom; that said defendants threatened to make a fishpond on said land, and destroy plaintiff's mill race and dam; that the effect of the construction of said dams, ditch, and pond, would be to prevent the water from going into the mill race of said plaintiff, at other times causing the water to flow in such quantities against plaintiff's dam as to cause it to be destroyed, and otherwise so injuring said land that it could not be used for the purpose it was in-

tended by the terms of the lease.   A temporary injunction
was asked, with prayer, as final relief, for perpetual injunc-
tion, restraining the defendants from digging the ditch, or
erecting any dam or pond or making any excavation on
the leased land, etc.   A temporary injunction was allowed
by the county judge of Fillmore country.

Defendant answered, asserting the ownership of the land
as alleged, and averring that on the 11th day of May, 1880,
said Jerusha A. Ellis commenced proceedings in *ad quod
damnum* to subject the part of plaintiff's land, described in
the lease set forth in plaintiff's petition, to overflow, and
such proceedings were had in said cause as resulted in the
execution of said lease therein described, to said Jerusha A.
Ellis, her heirs, and assigns, to overflow said land the same
as though it had been condemned in proceedings in *ad
quod damnum;* and which said lease, executed during said
proceedings, conveyed the same, and no other or greater
rights than if said land had been condemned in said *ad
quod damnum* proceedings, which was simply the right of
flowage, and to make and maintain their mill.   A trans-
cript of the *ad quod damnum* proceedings was set out in
the answer and made a part of it.   Plaintiff's possession
of the land was denied, and it was denied that defendant
entered upon the land on the north side of the river and
commenced digging a ditch across said land, and erecting
two dams in the river for the purpose of changing the
water from the channel of the river.   They admitted that
they did commence to make a fish pond on the land, as
they might lawfully do, and denied that they threatened
to destroy plaintiff's mill race or do any other unlawful act,
or that they ever threatened or attempted to divert the
water from plaintiff's mill or injure his race or dam.

Substantially all the allegations of the petition were
denied.   It was alleged that the defendant admitted, and
ever has admitted, the plaintiff's right to use the land
mentioned in the lease, with the right to use the same

as though the land had been condemned in *ad quod damnum* proceedings, and not otherwise; that defendants did commence on said land to cut a small ditch so as to turn the water, to enable them to make a fish pond upon the land, without in any measure diminishing the flow or quantity of water to the mill, and without in any manner interfering with the dam or race; that that was all they had threatened or proposed to do. Defendant further alleged that the plaintiffs claimed the exclusive right to pasture the land and gather the grass and herbage therefrom in utter disregard of the rights of the defendants, and in violation of the lease, and defendants claimed the right to enter upon the land, and build and make a fish pond, so long as they in no way interfered with the flow of water to the mill, and to use and occupy the land for pasture and cultivation, and for all other purposes, so long as the same in no way or manner interfered with the usefulness of plaintiff's mill. Defendants also prayed an injunction against plaintiff's restraining them from interfering with the ditch or pond and enjoining them from pasturing the land or taking the grass therefrom, or from in any way using the land contrary to the terms of the lease, and for general relief. Plaintiffs replied, admitting the execution of the lease as alleged in both petition and answer, and admitted that the lease was made after and for the purpose of closing the proceedings in *ad quod damnum* instituted in the district court, and contending that the lease fully defines the rights of the respective parties. The trial was had to the district court, which resulted in the following decree :

" And now on this second day of June, A. D. 1888, this cause came on to be heard on the pleadings and proof adduced by the respective parties, and the court being fully advised in the premises doth find, from the issues joined in the case, for the defendants; and the temporary order of injunction hereinbefore granted is dissolved, and that said

restraining order of injunction was wrongfully obtained;. and the court doth further find that under and by virtue of the lease stipulation and transcript of the record of the district court in the proceedings in *ad quod damnum* in the district court of Fillmore county, in the state of Nebraska, in the case of Jerusha A. Ellis v. The Burlington & Missouri River Railroad Company in Nebraska, a corporation duly organized under the laws of the state of Nebraska, and Frederic Garbe, defendants: That the said plaintiffs, by virtue of *mesne* conveyance from Jerusha A. Ellis, have the right to use said lands mentioned in said lease set. forth in defendants' answer, and in said transcript of the record of the proceedings in *ad quod damnum* herein referred to, the same as though said lands had been condemned in said proceedings in *ad quod damnum* and not otherwise, which is the right to flow the water back upon and over said lands for the said purpose of operating their said mill, and none other or greater rights; that the said defendants have the right to cut a ditch upon and over said lands and to so turn the water as to enable them to make and maintain a fish pond upon said lands without in any manner diminishing the flow or quantity of water to said plaintiffs' mill, and without in any manner interfering with the dam or race of said plaintiffs' mill; and the court further finds that said defendants have the exclusive right to pasture said lands and gather the grass and herbage therefrom, and to cut and take the timber from said lands mentioned in said lease, and to use and occupy said lands for pasture, meadow, or cultivation, and for all other purposes so long as they in no way interfere with the usefulness of plaintiffs' mill, or interfere or trespass upon the water rights of the plaintiffs, which is the right to flow said lands for mill purposes.  And the said defendants have the right to use said lands for all legitimate purposes, preserving and maintaining the water rights of said plaintiffs; and the court doth further find that the said defendants have the right to

erect and maintain a fish pond or ponds upon said lands mentioned in said lease, upon the condition that the same does not diminish the supply of water to plaintiffs' mill, and to dig ditches and take the water from said Blue river, on said leased lands, for fish pond or ponds; and the court doth further find and decree in accordance with the findings as set forth above.

"And the plaintiffs, their agents, servants, attorneys, and assigns, are forever and perpetually enjoined from in any way or manner interfering with ditch or ditches, fish pond or ponds, and they and each of them are enjoined from pasturing said lands mentioned in said lease, or taking the grass therefrom, or from using said lands, or in any way or manner contrary to the terms of said lease as herein interpreted, and it is further found, adjudged, and decreed that said plaintiffs' bill be and the same is hereby dismissed at the cost of said plaintiffs, and it is further considered, adjudged, and decreed, that said defendants recover their costs herein expended, taxed at $———."

From this decree plaintiff appeals. It appears from the record that about the time stated in the petition, Jerusha A. Ellis instituted proceedings in *ad quod damnum* against defendant for the purpose of securing the right to overflow the banks of the Blue river above her mill; that a jury was impaneled to assess her damages and returned their verdict in favor of defendants in the sum of $240; that defendants then appeared and filed their exceptions to the proceeding, when some kind of a compromise was made by which the lease referred to was entered into, and the sum of $941 was paid therefor. The stipulation referred to in the lease is not found in the record of this case.

The principal inquiry in this case is as to the proper construction to be given to the lease, as some of its provisions are contradictory and rather indefinite. The lease is as follows:

LEASE.

"Know all men by these presents, that we, Frederic Garbe and Wilhelminie Garbe, his wife, of the first part, for and in consideration of the sum of nine hundred and forty-one dollars, as well as for the purpose of carrying out the terms of the stipulation in the case of Jerusha A. Ellis against F. Garbe and Burlington & Missouri River Railroad Company in Nebraska, dated June 8th, 1881, and filed in district court of Fillmore county, Nebraska, do hereby, and by these presents, lease unto Jerusha A. Ellis, her heirs, executors, administrators, and assigns, for so long and for such a period of time as the said Jerusha A. Ellis, her heirs, executors, administrators, or assigns shall keep up and maintain a mill on or near the present site on section one, township 8 N., R. 4 W., the following described lands:

"All of the southwest quarter of the northeast quarter of section one, township number eight north, of range four west, except that part thereof lying southwest of the river and not overflowed by the mill dam of the said Jerusha A. Ellis as now maintained on said premises, said amount of land so reserved out of said S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$, amounting to eight and 32-100 acres. Also all that part of the northwest quarter of said section one, township 8 N., R. 4 west, more particularly described as follows: Commencing thirteen chains and eighty-two links north of the center of said section and running thence north to the section line, thence west 36 chains and 15 links, thence south 3 chains and 84 links, thence in a southeasterly direction and along the south bank of the river to the place of beginning:

"All of said land so leased to the said Jerusha A. Ellis, her heirs, executors, administrators, and assigns, amounting to (94 and 10-100) ninety-four and ten-one-hundredths acres, as the same was surveyed and platted by W. S. Crawford, county surveyor of Fillmore county, Nebraska,

on the 20th and 21st days of October, A. D. 1881, and as will more fully appear from the plat of said survey on file in the office of the clerk of the district court of Fillmore county, Nebraska, in the case of F. Garbe vs. Jerusha A. Ellis and the B. &. M. R. R. Co. in Neb.:

"To have and to hold the same to her and her heirs, executors, and administrators and assigns, for the purpose of running, maintaining, and operating a mill and for mill purposes, the said Jerusha A. Ellis and personal representatives and assigns to have all the rights, privileges, and use and benefit of said land as described in this lease for the purpose aforesaid, as though she were the owner thereof in fee simple. Except that said lessee nor his heirs or personal representatives or assigns are not to cut the timber, if any there be growing on said land so leased, but said lessors or their assigns are to have the right to this timber growing on said land, and provided further the said lessors and their assigns shall forever have free access to the southwest side of said river and dam for farming and stock purposes.

"This lease is an absolute lease for all the lands described in said lease for the period of time therein named and for all purposes save the exceptions expressly named.

"The rights of said Jerusha A. Ellis and her assigns under this lease are as to all of said leased lands, the same as if said lands had been condemned on proceedings in *ad quod damnum*. And the said Jerusha A. Ellis and her representatives and assigns are to pay all taxes hereafter assessed or levied upon the lands described in this lease.

"Witness our hands this 6th day of January, A. D. 1882."

Upon the trial, a rough plat or diagram of the whole of section one, showing the course of the river through it, was introduced in evidence, which, as an aid to an understanding of the contentions of the parties, we approximately reproduce:

21

Culver v. Garbe.

1, 1. Defendant's proposed dams.
2. Defendant's proposed ditch.
3. Plaintiffs' mill-race.
4. Plaintiffs' mill.
5. Plaintiffs' tail-race.
6. Plaintiffs' barn.
7. Residence.
8. Residence.
9. Beginning of survey named in lease.
......... Dotted line shows survey by straight line.

It is contended by plaintiffs, that by a proper and reasonable interpretation of the lease, they are entitled to the exclusive use of the land lying north of the south bank of the river, and are therefore entitled to pasture it, or to make of it such other use as they may desire; that defendants have no right to use it for any purpose, that it was so understood by defendants at the time of the execution of the lease, and therefore the reservations were made, and subject to which the rights of plaintiffs are as though she, the lessee, were the owner thereof in fee simple; and that " the lease is an absolute lease for all the land described therein for the period of time stated, and for all purposes save the exceptions expressly named."

This language, when taken in connection with the fact that a much larger sum was paid than named by the jury of inquest, and that the lessees were required " to pay all taxes hereafter assessed or levied upon the land described in this lease," and the reservation of the land on the southwest side of the river for farming purposes, would seem to indicate that the whole of the land described in the lease was to be conveyed thereby to the lessee; but it is quite probable that these quoted portions of the lease are modified by the other provisions, which limit the right of the lessees "to have and to hold" the property "for the purpose of running, maintaining, and operating a mill, and for mill purposes," and that the right of the lessee should be "the same as if said land had been condemned on proceedings in *ad quod damnum.*"

Comparatively little evidence of the circumstances accompanying and surrounding the execution of the lease, and which might have aided in its interpretation, was given, and for this reason we are inclined to accept the construction adopted by the district court, so far as the use of the farm or pasture land is concerned, as final ; although we may not feel entirely certain of its correctness. This part of the decree therefore will not be molested.

But it will be observed that by the decree the right of defendants to construct the two dams in the river, and to change the channel into the ditch or race is declared, and plaintiffs are enjoined from interfering therewith.

If the proper interpretation of the lease is as contended for by plaintiffs, that defendants have no higher or greater right than if the land had been condemned by proceedings in *ad quod damnum,* yet we are persuaded that that part of the decree is wrong and cannot stand. If it is true that plaintiffs have the same and no other rights than they would have had, had the *ad quod damnum* proceedings been prosecuted to the end, we apprehend there is no doubt but that they would have been protected from any inter-

ference with the stream above their dam, to the head of dead water, which might be to their damage; and by section 24, chapter 57, of the Compiled Statutes, the owner or occupier of the mill would have the right to enter upon any land through which the stream might pass, to restore any injury which may have been done to the banks, and thus prevent the water escaping therefrom.    The owner of such mill, after procuring the right to dam a stream, and cause the water to set back upon said stream, has a vested right not only in the water, which he would have by reason of his title to the land through which it runs, and to the fall caused by his dam, but to the reservoir of water created thereby, and in this right he is entitled to protection the same as in any other.    It must be apparent that by two dams within the dead water caused by the plaintiff's dam, the reservoir would be greatly diminished, and to that extent the value of the franchise would be impaired.    But aside from this, the uncontradicted testimony of John Runnell, who has been in the milling business for thirty-five years, and who has resided near the property in question for the last ten years, was to the effect that by damming the water, as proposed by defendant, plaintiffs' dam might be washed away; that it was difficult to make a dam that would withstand the water when high, and that on an occasional high water the dam, when erected by defendant, would wash out, and cause the destruction of plaintiffs' dam.    Upon cross-examination he testified to the question, "Do you mean to say that the cutting across there would endanger the dam below?"    His answer was, "Yes, sir; I do—it might at times."  He was then asked, "How might it if there was a free flow through here?" To which he answered, "He can't cut the channel so as not to check the water through there without cutting twelve feet deep."

A careful examination of the evidence and plat of the **river** at the point where it is proposed to construct the

ditch and dams, satisfies us that the proposed improvement cannot be made without endangering plaintiffs' property. This being true, the law will afford relief and protection.

The decree of the district court must therefore be modified so as to protect the rights of plaintiffs to the exclusive use of the river and the water therein in defendant's land, and defendant will be enjoined from constructing the dams and ditch referred to, As thus modified, the decree will be affirmed.

JUDGMENT ACCORDINGLY.

THE other Judges concur.