Smith v. Garbe.

---

WILLIAM SMITH ET AL., APPELLEES, V. ALBERT F. GARBE, APPELLANT.

FILED FEBRUARY 10, 1910.   No. 15,783.

1. **Easements.** Whether an easement in a given case is appurtenant or in gross is to be determined mainly by the nature of the right and the intention of the parties creating it. If it be in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant to the land, and not an easement in gross.

2. ———: APPURTENANT PASS BY CONVEYANCE. An easement appurtenant to land will pass by a conveyance, although the words "with the appurtenances" are not used.

3. **Case Followed.** *Culver v. Garbe,* 27 Neb. 312, reaffirmed and *held* to be decisive of the rights of the parties in this case.

APPEAL from the district court for Fillmore county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Charles O. Whedon* and *H. P. Wilson,* for appellant.

*Charles H. Sloan, Frank W. Sloan* and *J. J. Burke, contra.*

FAWCETT, J.

A number of questions have been discussed in this case which we do not deem it necessary to consider. Various assignments of error on the part of the trial court in the admission of evidence cannot be considered for two reasons: First, no motion for new trial was filed in the court below; second, even if there had been such a motion, this is an equity case and was tried to the court without the aid of a jury. In such cases the rule is well settled in this state that errors of the court in admitting testimony will not be considered. This court will presume that the trial court only considered the competent and material evidence received.

The main question involved in the case is the right of defendant to maintain a certain ditch and two dams which the undisputed evidence shows were dug and constructed within the dead water zone of the plaintiffs' milldam. The rights of the parties with regard to this question we think were fully settled by this court in *Culver v. Garbe*, 27 Neb. 312. All of the rights of the parties to this suit were derived from the parties in that case, and depend upon the same lease, and the same stipulation and decree in proceedings in *ad quod damnum* considered, construed and decided in the said case, to which we refer for a statement of the main contention of the parties and for a copy of the lease, and stipulation and proceedings in *ad quod damnum* hereinbefore alluded to. In that case plaintiffs sought to enjoin defendant therein from digging the ditch and constructing the two dams referred to. The Culvers also claimed the right to cut the grass upon the lands described in the lease, which were not actually submerged. The district court found in favor of the defendant, and decreed that defendant was entitled to cut the grass upon the lands in controversy, not submerged, and to dig the ditch and construct the dams referred to, and enjoined plaintiffs from in any manner interfering with defendant in digging and con-

structing said ditch and dams, and from going upon the land to cut grass. On appeal by plaintiffs to this court, the judgment of the district court, so far as the use of the farm or pasture land was concerned, was affirmed. As to the ditch and dams referred to we held: "A careful examination of the evidence and plat of the river at the point where it is proposed to construct the ditch and dams, satisfies us that the proposed improvement cannot be made without endangering plaintiffs' property. This being true, the law will afford relief and protection. The decree of the district court must therefore be modified so as to protect the rights of plaintiffs to the exclusive use of the river and the water therein in defendant's land, and defendant will be enjoined from constructing the dams and ditch referred to. As thus modified, the decree will be affirmed. Judgment accordingly."

It seems that when the mandate of this court was sent down in that case it was never entered of record in the district court, and it is now contended by defendant that the judgment of the district court thereby remained in full force and effect and is *res adjudicata,* and that plaintiffs, upon the trial of this case, could not offer in evidence the said mandate. This contention is without merit. The judgment of this court did not reverse the judgment of the court below and remand the cause for further proceedings. The judgment entered here became final and binding upon the parties regardless of whether the mandate was ever entered of record in the district court or not. This being true, then it clearly appears that by the judgment of this court it was finally decided that defendant had no right to and should not dig the ditch and construct the dams in controversy. In the syllabus we held that "appellant had a vested right in the stream and water within the land covered by the lease, and that appellee had no right or authority to interfere therewith, and would be enjoined from changing the course of the stream, constructing the dam, or diminishing the appellant's reservoir or supply of water." Contention is made that the

lease and stipulation referred to only gave plaintiffs the right of flowage of the land in controversy. This contention cannot be sustained. The language of the lease is: "To have and to hold the same to her and her heirs, executors, and administrators and assigns, for the purpose of running, maintaining, and operating a mill and for mill purposes, the said Jerusha A. Ellis and personal representatives and assigns to have all the rights, privileges, and use and benefit of said land as described in this lease for the purpose aforesaid, as though she were the owner thereof in fee simple. Except that said lessee nor his heirs or personal representatives or assigns are not to cut the timber, if any there be growing on said land so leased, but said lessors or their assigns are to have the right to this timber growing on said land, and provided further the said lessors and their assigns shall forever have free access to the southwest side of said river and dam for farming and stock purposes. This lease is an absolute lease for all the lands described in said lease for the period of time therein named and for all purposes save the exceptions expressly named. The rights of said Jerusha A. Ellis and her assigns under this lease are as to all of said leased lands the same as if said lands had been condemned on proceedings in *ad quod damnum*. And the said Jerusha A. Ellis and her representatives and assigns are to pay all taxes hereafter assessed or levied upon the lands described in this lease." The duration of the lease was to be "for so long and for such a period of time as the said Jerusha A. Ellis, her heirs, executors, administrators, or assigns shall keep up and maintain a mill on or near the present site on section one", etc. It is clear that this gave more than the right of flowage. It gave to Mrs. Ellis and her representatives and assigns the right to use said land "for the purpose of running, maintaining, and operating a mill and for mill purposes." This would include not only the right of flowage, but also the right to use the land (94 10-100 acres) in any manner necessary for the proper protection and operation of the

mill and for mill purposes, including the right to extend her dam, if need be, onto the lands so leased to her. In the face of the judgment of this court, defendant, or those under whom he claims, proceeded to dig the ditch and construct the dams in controversy, and in addition thereto place other obstructions upon the lands so leased to plaintiff's grantors, and refuses to permit plaintiffs to go upon the leased lands for the purpose of removing such obstructions and filling the ditch and removing the dams referred to. This suit was brought to enjoin such interference. The district court found for the plaintiffs, and entered a decree giving them the right to the free use of the lands obtained under the aforesaid lease, and to take all necessary steps to protect their mill and dam, reservoir and water supply, and enjoining defendant "from interfering with or preventing the plaintiffs, their legal representatives, heirs and assigns from going upon said lands so described in the said grant from Frederick Garbe and wife to Jerusha A. Ellis and assigns, for the purpose of caring for, protecting, repairing and maintaining the said milldam, waste gate, race and reservoir, and removing obstructions therefrom or protecting and strengthening the banks thereof, and doing any and all of the things reasonably necessary for the protection and maintenance of said appurtenances to said mill for the proper and successful operation thereof for mill purposes, and said defendant is hereby ordered to remove any dams or other obstructions he has placed in said stream or mill-pond, and to fill up the ditch by him constructed, within —— days from the entry of this decree, and, upon his failure so to do, the said defendant is enjoined from interfering with or hindering the plaintiffs in the removal of said obstructions and the filling of said ditch." Some other minor points are covered which we do not deem it necessary to set out. We think the decree is fully sustained both by the evidence introduced in this case, and by the former judgment of this court.

Defendant contends that the lease to Mrs. Ellis was an

easement "in gross", and not "appurtenant." There are
two reasons why defendant's contention must fail: (1)
The lease itself recites: "To have and to hold the same to
her and her heirs, executors, administrators and assigns";
(2) it is beyond dispute that the grant of the land de-
scribed in the lease to Mrs. Ellis was for the purpose of
enabling her, her heirs and assigns to use the said lands
"for the purpose of running, maintaining, and operating
a mill and for mill purposes." It was known both to the
grantor and grantee under that grant that the lands
therein described were to be used as a necessary appurte-
nance to the land and mill to which it was contiguous.
In such a case an easement in gross will never be pre-
sumed. In *Winston v. Johnson,* 42 Minn. 398, it is held:
"A grant *in gross* is never presumed when it can fairly
be construed as appurtenant to some other estate." In
*Lidgerding v. Zignego,* 77 Minn. 421, the same rule is
again announced. In *Cadwalader v. Bailey,* 17 R. I. 495,
it is said: "Whether an easement in a given case is ap-
purtenant or in gross is to be determined mainly by the
nature of the right and the intention of the parties cre-
ating it. * * * If it be in its nature an appropriate
and useful adjunct of the land conveyed, having in view
the intention of the grantee as to its use, and there being
nothing to show that the parties intended it to be a mere
personal right, it should be held to be an easement ap-
purtenant to the land, and not an easement in gross, the
rule for the construction of such grants being more favor-
able to the former than to the latter class." In *Johnson
v. Sherman County I., W.-P. & I. Co.,* 63 Neb. 510, we
held: "Where a mill is erected and a water-power ob-
tained by the aid and co-operation of adjoining landown-
ers, any right of flowage over their premises of water for
the mill arranged for and contemplated by the owners,
as subscribers towards its construction, becomes appurte-
nant to the mill."

It is further contended by defendant that even if the
grant to Mrs. Ellis, under the lease referred to, created

an easement appurtenant to the land, it did not pass to plaintiffs, for the reason that in the chain of title from Mrs. Ellis down to plaintiffs several of the deeds conveyed the mill property by a description of the land only, without mention of "appurtenances" or "hereditaments." The record shows that Mrs. Ellis and her husband conveyed to J. H. Welch and R. Price by description of their land, "together with all and singular the hereditaments and appurtenances." Price conveyed his half to Smith without mention of appurtenances or hereditaments. Smith conveyed to Jasper Culver without mention of appurtenances or hereditaments. Welch conveyed his half, which he obtained from Mrs. Ellis, to Helen M. Culver, wife of Jasper, without mention of appurtenances or hereditaments. With the title thus standing in them, the Culvers brought the suit against Frederick Garbe and wife, the grantors in the lease in controversy, decided in 27 Neb. 312, hereinbefore referred to, in which suit the rights of the Culvers under a title so obtained were established. Subsequently the Culvers conveyed the lands "with all the appurtenances." The parties to whom they conveyed, conveyed to their grantees without mention of appurtenances; and so the conveyances proceeded until title was obtained by plaintiffs in this action, some of the deeds mentioning appurtenances, and others making no mention thereof. We think it is immaterial whether the deeds contained the words "with the appurtenances and hereditaments" or not. In *Morrison v. King*, 62 Ill. 30, it is held: "Incorporeal hereditaments appendant or appurtenant to land will pass by a conveyance of the land as an incident thereto. Thus, if a house or store be conveyed, every thing passes which belongs to and is in use for it, as an incident or appurtenant, without the use of the word '*appurtenances*', by mere operation of law." In the opinion the court say: "The foundation of the doctrine of easement in this and similar classes of cases is a disposition and arrangement of the premises as to the uses of the

different parts, by him having the unity of seizin, and then a severance. It being a general principle in relation to grants that every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for, it would seem to follow that each portion of the severed premises should pass subject to all the burdens and advantages imposed or conferred by the proper owner." The same court in *Shelby v. Chicago & E. I. R. Co.*, 143 Ill. 385, 400, say: "An easement appurtenant to land will pass by a conveyance, although the words 'with the appurtenances' are not used. Those words will not enlarge the scope of the deed. Whatever is actually appurtenant to the land granted passes without those words." In the opinion they say: "What we have said thus far is upon the theory that the right to have the dams maintained did not pass to the railroad company by the deed, but we are inclined to the opinion that said right constituted an easement appurtenant to the land, and as such passed by the conveyance. It is true the words, 'with the appurtenances', or equivalent words, were not employed in the deed, but those words, if used, would not have enlarged the scope of the deed, for what is actually appurtenant to the land granted passes without such words, it being the general rule that whatever is in use for the land as an incident or appurtenance passes by a conveyance of the land." Again in *Jarvis v. Seele Milling Co.*, 173 Ill. 192, they say: "The question here is not, as assumed by appellant, whether the mill can be operated without the mill-pond, but whether the use of the mill-pond passed as a necessary appurtenant of the mill property. The deed or grant of conveyance need not contain the word 'appurtenance', or similar expression, in order that appurtenances will pass thereby." In *Huttemeier v. Albro*, 18 N. Y. 48, the court say: "It is also a fair conclusion, in the absence of evidence excluding that idea, that the grantors designed to convey, with the lots, a way which had been long used as appurtenant to them. * * * It is a general rule that,

upon a conveyance of land, whatever is in use for it, as an incident or appurtenance, passes with it. The law gives such a construction to the conveyance, in view of what is thus used for the land as an incident or appurtenance, that the latter is included in it." In *United States v. Appleton,* 1 Sumn. (U. S.) 492, the court, speaking through Mr. Justice Story, say: "It has been very correctly stated at the bar that in the construction of grants the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. In truth, every grant of a thing naturally and necessarily imports a grant of it, as it actually exists, unless the contrary is provided for."

Under the authorities above cited it seems very clear that the rule is just the opposite of that contended for by defendant; that is to say, the inference is that a grant of land carries with it the appurtenances, "unless the contrary is provided for", and not that the appurtenances do not follow the land unless the deed so recites. If, as stated by Mr. Justice Story, we take into consideration "the circumstances attendant upon the transaction", at each time the land was sold and deed made, and "the particular situation of the parties", and "the state of the thing granted, for the purpose of ascertaining the intention of the parties", there can be no escape from the conclusion that in the case at bar it was the intention of the parties in each instance to convey the land, together with the rights appurtenant thereto obtained under the lease in question.

Upon any theory of the case, the judgment of the district court is right, and it is therefore

AFFIRMED.

REESE, C. J., not sitting.